# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DORSEY (#R-03996), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cv-05747 |
| | ) | |
| PARTHASARATHI GHOSH, M.D., | ) | Judge Andrea R. Wood |
| LATONYA WILLIAMS, IMHOTEP | ) | |
| CARTER, M.D., RONALD SCHAEFER, | ) | |
| M.D., SALEH OBAISI, M.D., MARCUS | ) | |
| HARDY, MICHAEL LEMKE, TARRY | ) | |
| WILLIAMS, and WEXFORD HEALTH | ) | |
| SOURCES, INC., a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Dorsey, a prisoner of the State of Illinois who is imprisoned at the Stateville Correctional Center ("Stateville"), has brought this lawsuit alleging that he received inadequate medical care while incarcerated, in violation of his rights under the Eighth and Fourteenth Amendments of the United States Constitution. Dorsey has sued several members of Stateville's medical staff—Parthasarathi Ghosh, M.D., LaTonya Williams, N.P., Imhotep Carter, M.D., Ronald Shafer, M.D., and Saleh Obaisi, M.D.—all of whom were employed by Defendant Wexford Health Sources Inc. ("Wexford," and collectively with Ghosh, Williams, Carter, Shafer, and Obaisi, the "Wexford Defendants"). Dorsey also has named as defendants two former Wardens of Stateville, Marcus Hardy and Michael Lemke, as well as Stateville's current Warden, Tarry Williams ("Warden Williams," and collectively with Lemke, Hardy, and the Wexford Defendants, "Defendants").

Hardy and Lemke have filed a motion asking the Court to dismiss Dorsey's claims against them ("Motion to Dismiss"). (Dkt. No. 63.) Also before the Court is Dorsey's motion to

strike affirmative defenses asserted by the Wexford Defendants in their answer to the amended complaint ("Motion to Strike"). (Dkt. No. 65.) For the reasons set out below, the Motion to Dismiss is denied and the Motion to Strike is granted in part and denied in part.

## BACKGROUND

On August 12, 2013, Dorsey filed this suit against Ghosh, Williams, Carter, and Shafer. In his initial *pro se* complaint, Dorsey alleged that those defendants denied him medical care and treatment in deliberate indifference to his serious medical need caused by a gunshot wound that he suffered in his youth. Dorsey filed an amended complaint through counsel on April 30, 2014. This amended complaint elaborated on the factual allegations in the original complaint, and also added claims against Obaisi, Wexford, Hardy, Lemke, and Warden Williams.

Specifically, in his amended complaint,[1] Dorsey alleges that he suffers from chronic pain in his right knee, ankle, and foot due to the gunshot wound. (Am. Compl. ¶ 15, Dkt. No. 34.) Dorsey also claims to suffer from chronic back pain; numbness in his chest, arms, and legs; pain in his groin and rectal area; and blood in his stool. (*Id.*) In 2006, while detained by the Cook County Department of Corrections, Dorsey was diagnosed with degenerative joint disease of the lumbar spine. (*Id.* ¶¶ 18-19.) He further alleges that after being transferred to Stateville in October 2007, he complained about his maladies at various times to the Wexford Defendants, but those defendants did not prescribe him appropriate treatment "due to a custom and practice of prioritizing cost-cutting over inmates' medical needs." (*Id.* ¶ 21.)

Dorsey alleges that Hardy was the head warden of Stateville from 2010 to 2013, and that Lemke served in the same position during the year 2013. (*Id.* ¶¶ 11-12.) During the time periods when Hardy and Lemke served as head warden, they each were responsible for the operation of

---

[1] For the purposes of the Motion to Dismiss, the Court takes the allegations set forth in Dorsey's amended complaint as true and draws all reasonable inferences in Dorsey's favor. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005).

Stateville and the welfare of all inmates there, and their job duties included oversight of medical staff operations. (*Id.*) Dorsey further alleges, on information and belief, that during their respective tenures as warden, Hardy and Lemke oversaw daily operations in Stateville's Health Care Unit; signed off on permits, grievances and grievance officer responses; approved outpatient furloughs; and otherwise were personally involved with medical decisions. (*Id.* ¶ 49.) Dorsey further alleges, again on information and belief, that the contract between the Illinois Department of Corrections and Wexford subjects all decisions concerning outpatient medical treatment to the approval of prison officials, including Hardy and Lemke when they served as warden. (*Id.* ¶ 50.)

Between March 2010 and September 2012, Dorsey submitted a number of grievances to Hardy regarding the inadequate health care he claims to have received from the Wexford Defendants. Hardy reviewed these grievances. (*Id.* ¶¶ 23, 26, 35.) In these grievances, Dorsey complained of pain in his lower back and right leg, reported continuing lack of medical treatment, and requested various medical treatments. (*Id.*) Dorsey does not describe Hardy's response to each of these grievances in his complaint, but he does allege that Hardy concurred with and signed a grievance officer's recommendations of "no action" in response to the grievances dated July 17, 2011, October 4, 2011, and October 21, 2011. (*Id.* ¶¶ 30 n.1, 32 n.2, 35.) Similarly, Dorsey alleges that he submitted a number of grievances regarding his medical care dated between July 13, 2013 and November 2, 2013, and that Lemke reviewed these grievances. (*Id.* ¶¶ 42, 43, 45.) Dorsey further alleges that Lemke concurred with and signed a grievance officer's recommendations of "no action" in response to Dorsey's grievances dated July 13, 2013 and August 7, 2013. (*Id.* ¶ 43.) Finally, Dorsey alleges that, although Lemke

3

reviewed and signed a grievance dated November 2, 2013, Dorsey received no response. (*Id.* ¶ 45.)

In response to the amended complaint, Hardy and Lemke filed the Motion to Dismiss, while the Wexford Defendants jointly filed an answer. (Dkt. No. 55.) The Wexford Defendants' answer asserted four purported affirmative defenses: (1) that the amended complaint fails to state a claim upon which relief can be granted; (2) that "[t]o the extent plaintiff may be seeking relief from this defendant in his alleged official capacity, this claim should be dismissed as to the extent this defendant, as an official of the state, is immune;" (3) that Dorsey failed to exhaust his administrative remedies; and (4) that Dorsey's claims are barred by the statute of limitations. In his Motion to Strike, Dorsey seeks to strike each of these affirmative defenses.

## DISCUSSION

### I. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, this short plain statement must overcome two hurdles. First, the complaint's factual allegations must give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a complaint to contain "detailed factual allegations." *Id.* (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Dorsey claims that Defendants violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment by acting with deliberate indifference to his serious medical needs. Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Since a § 1983 cause of action must be against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). Individuals may be held liable under § 1983 if they caused or participated in the alleged constitutional deprivation. *Flowers v. Velasco*, No. 00 C 1708, 2000 WL 1644362, at *4 (N.D. Ill. Oct. 19, 2000) (citing *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). However, a § 1983 action is predicated on fault and requires that a defendant be personally involved in some way to be held liable. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). The doctrine of *respondeat superior* does not apply to actions filed under § 1983. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Rather, to be held liable for the actions or omissions of their subordinates, supervisors "must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

In the Motion to Dismiss, Dorsey and Lemke argue that, as non-medical prison officials, they cannot be held liable for Dorsey's medical care. It is true that generally speaking "[p]rison directors and wardens are 'entitled to relegate to the prison's medical staff the provision of good medical care.'" *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir. 2012) (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). However, the Seventh Circuit has recognized that a prison official may be held liable for deliberate indifference to a prisoner's serious medical needs—even when that prisoner is under medical supervision—where that prison official has "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)).

Here, Dorsey alleges that Hardy and Lemke had actual knowledge that the Wexford Defendants were providing substandard treatment for Dorsey's various ailments, as they personally reviewed Dorsey's grievances regarding the medical care he was receiving. (Am. Compl. ¶¶ 23, 26, 35, 42, 43, 45, Dkt. No. 34.) Furthermore, Dorsey alleges that Hardy and Lemke oversaw medical staff operations, that they were personally involved with medical decisions, and that they approved decisions concerning outpatient medical treatment. (*Id.* ¶ 49.) These factual allegations are sufficient, at the pleading stage, to support an inference that Hardy and Lemke had actual knowledge of Dorsey's insufficient medical care. Accordingly, Dorsey states a claim against Lemke and Hardy. *See Arnett*, 658 F.3d at 755; *see also Boyce v. Johnson*, No. 13 C 6832, 2014 WL 3558762, at *3 (N.D. Ill. July 17, 2014) (denying prison warden's motion to dismiss when the inmate's communications to him "claimed that medical personnel had mistreated him or failed to provide necessary follow-up care"); *Zirko v. Ghosh*, No. 10 C 08135, 2012 WL 5995737, at *12 (N.D. Ill. Nov. 30, 2012) (allegations that warden received

numerous grievances and complaints of lack of treatment for severe pain sufficient to state a claim for deliberate indifference); *Young v. Wexford Health Sources*, No. 10 C 08220, 2012 WL 621358, at *4 (N.D. Ill. Feb 14, 2012) (denying motion to dismiss warden on deliberate indifference claim where plaintiff had informed warden that he was being denied access to the health care unit); *Nolan v. Thomas*, No. 11 CV 1565, 2011 WL 4962866, at *2-3, 6 (N.D. Ill. Oct. 19, 2011) (warden's knowledge of grievance regarding substandard medical care was sufficient to state claim for deliberate indifference to serious medical need).[2]

Discovery may establish that Hardy and Ghosh were appropriately deferential to the treatment provided to Dorsey by medical staff. *See Harris v. Ghosh*, No. 10 C 7136, 2012 WL 3903894, at *8 (N.D. Ill. Sept. 7, 2012) (granting summary judgment to nonmedical defendants because record did not show that these defendants' decision to defer to the judgment of medical professionals was deliberately indifferent). However, Dorsey has alleged sufficient facts to state a claim against Hardy and Ghosh at the pleading stage. Accordingly, the Court denies the Motion to Dismiss. Dorsey's claims against Hardy and Lemke may go forward.

**II.     Motion to Strike**

In his Motion to Strike, Dorsey seeks to strike all of the affirmative defenses pleaded in the Wexford Defendants' answer. Federal Rule of Civil Procedure 12(f) authorizes a court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Affirmative defenses are pleadings subject to the requirements of the

---

[2] Hardy and Lemke argue that Dorsey's claims against them should be dismissed because a deliberate indifference claim cannot proceed against a warden where there is "no personal involvement by the warden [in an inmate's medical care] outside the grievance process." (Reply at 4, Dkt. No. 82 (quoting *Gevas*, 492 Fed. Appx. at 660 (7th Cir. 2012).) However, Dorsey's allegations that Hardy and Lemke received numerous notifications that Dorsey was suffering from serious medical issues, and that both had extensive personal responsibility over the provision of medical services, distinguish the instant case from *Gevas* and the district court cases that Hardy and Lemke cite in further support of this argument.

Federal Rules of Civil Procedure." *Nationwide Advantage Mortg. Co. v. Mortg. Servs. III, LLC*, No. 13 C 83, 2013 WL 2403654, at *1 (N.D. Ill. May 31, 2013). Thus, affirmative defenses must comply with Federal Rule of Civil Procedure 8 and set forth a "short and plain statement" of the basis for the defense. *Id.* (quoting Fed. R. Civ. P. 8). The sufficiency of an affirmative defense is evaluated under a standard identical to Federal Rule of Civil Procedure 12(b)(6). *Id.* Thus, "an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted." *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006).[3] As a practical matter, however, affirmative defenses rarely will be as detailed as a complaint (or a counterclaim); nor do they need to be in most cases to provide sufficient notice of the defense asserted. But a problem arises when a party asserts boilerplate defenses as mere placeholders without any apparent factual basis.

The Wexford Defendants' First Affirmative Defense states the standard for a deliberate indifference claim and declares that Dorsey has failed to allege facts sufficient to state a cause of action as to the Wexford Defendants. (Wexford Defs.' Ans. at 6-7, Dkt. No. 55.) There is some controversy in this District regarding whether failure to state a claim may be raised as an affirmative defense. *See Reis Robotics*, 462 F. Supp. 2d at 905. However, even assuming that failure to state a claim may be raised as an affirmative defense, the Wexford Defendants have plainly failed to satisfy the pleading standard under Federal Rule of Civil Procedure 8, as the First Affirmative Defense provides no explanation as to how Dorsey has failed to state a claim. *See id.* The Court also notes that the Wexford Defendants did not file a motion to dismiss the

---

[3] The Wexford Defendants argue that the heightened pleading standard established in *Twombly* and *Iqbal* does not apply to pleading in affirmative defenses. (Resp. to Mot. to Strike at 1-3, Dkt. No. 75.) The Court notes that "the majority view [is] that *Twombly* and *Iqbal* apply to affirmative defenses." *Shield Tech. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012).

complaint pursuant to Rule 12(b)(6), which might have shed light on the basis for the purported defense. Accordingly the First Affirmative Defense is stricken without prejudice.

The Wexford Defendants' Second Affirmative Defense states, in its entirety, that "[t]o the extent plaintiff may be seeking relief from this defendant in his alleged official capacity, this claim should be dismissed as to the extent this defendant, as an official of the state, is immune." (Wexford Defs.' Ans. at 6-7, Dkt. No. 55.) The affirmative defense does not explain which of the five moving defendants claims to be an official of the state, why that defendant is an official of the state, or the claimed basis for or extent of that defendant's immunity. At a minimum, the defense must identify which of the moving defendants is "this defendant." Accordingly, the Second Affirmative Defense is stricken without prejudice.

The Wexford Defendants' Third Affirmative Defense states, in its entirety, that Dorsey's Amended Complaint "is barred, in that plaintiff failed to properly exhaust his administrative remedies prior to the filing of this litigation" pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). While this defense contains no detailed factual allegations, the Court finds that it is nonetheless sufficient to put Dorsey on notice of the nature of the defense that is being raised. The process for exhausting administrative remedies is definite and known to the parties in this case. Dorsey himself pleaded facts in his amended complaint regarding his efforts to seek relief through administrative channels. (*See, e.g.*, Am. Compl. ¶¶ 30 n.1, 32 n.2, 35, 42, 43, Dkt. No. 34.) Thus, the Wexford Defendants' Third Affirmative Defense may fairly be understood as challenging whether the steps that Dorsey claims to have taken occurred as he says they did and, if so, whether they were sufficient to exhaust his administrative remedies. While Dorsey might desire more information from the Wexford Defendants, such information may be explored during discovery. The Court further notes that much of the information necessary to determine

the exhaustion issue is likely to be in the possession of the Illinois Department of Corrections. Thus, the Wexford Defendants would be expected to need some discovery themselves to flesh out the details of their defense and thus they will be granted to some leeway with respect to their pleading.

Finally, the Wexford Defendants' Fourth Affirmative Defense states, in full, that Dorsey's amended complaint "violates the applicable two year statute of limitations as applied to the alleged acts of this defendant." In contrast to the exhaustion issue, the basis for any purported statute of limitations defense is completely unknown. The Wexford Defendants' answer does not reveal any information about what action they believe Dorsey should have taken sooner than he did. Furthermore, it is unclear whether the defense is asserted by one, some, or all of the Wexford Defendants as they again fail to specify which of them is the referenced "this defendant." Thus, the bare-bones pleading of the Wexford Defendants' Fourth Affirmative Defense cannot stand, as the Wexford Defendants plead no facts that would raise either defense beyond a speculative level. *See Employers Mut. Cas. Co*, 2009 WL 2567977, at *2. Accordingly, the Fourth Affirmative Defense is stricken without prejudice.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is denied. Hardy and Lemke shall answer the amended complaint by June 24, 2015. The Motion to Strike is granted in part and denied in part. The First, Second, and Fourth Affirmative Defenses are stricken without prejudice. The Wexford Defendants may amend their answer to re-plead their affirmative defenses by June 24, 2015, should they be able to do so consistent with Federal Rule of Civil Procedure 11.

ENTERED:

Dated: June 3, 2015

_____
Andrea R. Wood
United States District Judge